**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VLADIMIR GOLDSHTEYN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:10-cv-5402 |
| v. | ) ) | Judge Nolan (Consent Case) |
| ARGONNE CREDIT UNION, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF FINAL APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT**

**Introduction**

This suit arose under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*.

("EFTA"). Plaintiff alleged, on behalf of himself and a class of those similarly situated, that

Defendant violated the EFTA's mandatory disclosure requirements by failing to post notice of

the ATM surcharges Argonne assessed at several of its Chicagoland ATMs. After written

discovery was exchanged, the parties began several rounds of arms-length settlement

negotiations, which concluded with a spirited mediation before this Court. Eventually, the

parties reached what they considered to be a fair, just and reasonable settlement.

On December 20, 2012, this Court entered preliminary approval as to the parties'

settlement agreement, finding that the proposed settlement was within the range of fairness and

reasonableness. *See* Exhibit A, Signed Preliminary Approval Order. As a result, notice to the

Class issued. *See* Exhibit B, Proofs of Publication and Website Notice. Now, since notice has

issued, and no opt-outs or objections were received,[1] Plaintiff requests a final approval order and

respectfully submits this memorandum of law in support of his request.

---

[1]     *See* Exhibit C, Affidavit of Class Settlement Administrator.

## Terms of Settlement

As set forth in the parties' settlement agreement, and entered preliminary approval order, the Class is defined as:

> All persons who, from August 26, 2009 to August 26, 2010, were charged a transaction fee for the use of an Argonne Credit Union automated teller machine.

The ATMs included in the class definition were located at: (a) 9700 S. Cass Avenue at the Argonne National Laboratory in Argonne, Illinois, (b) 1350 W. Renwick Road, Romeoville, Illinois, (c) 2800 75th Street, Woodridge, Illinois, and (d) Kirk and Pine Street in Batavia, Illinois.

The settlement agreement provided the following relief for the Class:

A. Establishment of Settlement Fund. Defendant shall pay $150,000.00 for the benefit of the Settlement Class. No more than $15,000.00 of the Fund shall be used for Class Notice and Settlement Administration Costs.

B. Payment to Class Representative. Plaintiff shall be eligible to receive a total of $2,000.00 from the Settlement Fund for his individual claims and as an incentive award for his services as Class Representative.

C. Payment to Plaintiff's Counsel. Plaintiff's Counsel may petition to receive 1/3 of the Settlement Fund, up to $50,000.00, for reimbursement of attorneys' fees and costs, as approved by the Court.

D. Class Recovery. The amount remaining in the Settlement Fund after payment of, (1) the Class Notice and Settlement Administration Costs, (2) the Class Representative award, and (3) Plaintiff's counsel's fees and costs, shall be divided *pro rata* among Participating Claimants so that each claimant is eligible to receive $1,000.00.

To date, the following costs have been incurred in settlement administration:

| Service Performed | Invoice Amount | Exhibit Reference Number |
|---|---|---|
| Publication Notice of Class Action Settlement, Chicago Sun Times | $1,725.00 | B |
| Publication Notice of Class Action Settlement, Naperville | $574.00 | B |

| Sun | | |
|---|---|---|
| Website Notice | $500.00 | B |
| TOTAL | $2,799.00 | |

Thus, even with the final bill from the Settlement Administrator forthcoming, the parties will have maintained the $15,000.00 notice and administration budget and the unused portion will remain in the Settlement Fund for distribution. As of April 17, 2012, 42 claimants timely returned W-9 forms and thus, each participating claimant who submitted a valid claim form and W-9 form will receive $1,000.00 from the settlement fund, the maximum relief available if each filed suit individually under the EFTA.[2] *See* <u>Exhibit C</u>, Affidavit of Settlement Administrator.

Accordingly, because each claimant will be receiving the maximum statutory damages available under the Act, and no opt-outs or objections were received, the settlement should be finally approved as fair, adequate, reasonable and in the best interests of the Class Members.

<u>**The Settlement Is Fair, Reasonable, And Adequate
And Should Be Granted Final Approval By This Court**</u>

**A.      The Standards For Judicial Approval Of Class Action Settlements**

A proposed settlement of a class action should be approved where, as here, the compromise is fair, adequate, and in the best interest of the class members.[3] In making its determination whether a settlement is fair, reasonable, and adequate, the court should consider the following factors: (1) the likelihood of plaintiff's success on the merits; (2) the extent of

---

[2]      15 U.S.C. §1693m(a)(2) ("EFTA").

[3]      *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (district court's inquiry limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate).

support from the parties; (3) the judgment of counsel; (4) the presence of good faith bargaining; and (5) the complexity and nature of the issues of law and fact.[4]

In applying these factors, the court neither substitutes its judgment for that of the parties who negotiated the settlement nor conducts a mini-trial of the merits of the action. Where, as here, the settlement was negotiated at arm's-length, the settlement enjoys a presumption that it is fair, reasonable and in the best interests of the class.[5]

The court should reach an objective opinion as to the probabilities of ultimate success compared to the benefits obtained through compromise. As one court noted,

> [T]he determination of what amount of money constitutes a fair settlement is not a matter of mathematical science. On the one hand perhaps plaintiff's counsel could have obtained more for the class than a jury would award; on the other hand, it may be less. The court is in no position to substitute its judgment for that of honest and competent attorneys, who, after exhaustive discovery, have made a determination that the settlement represents a fair and realistic appraisal of their clients' chances of ultimate success.[6]

Finally, as a matter of public policy, "federal courts naturally favor the settlement of class action litigation."[7] In fact, in determining whether the settlement is fair, reasonable, and adequate, courts undertake their inquiry, "with an eye to the public policy favoring voluntary resolution of litigation through settlement."[8] As discussed below, application of the foregoing principles and factors demonstrates that the proposed settlement is fair, reasonable, and adequate and merits this Court's final approval.

---

[4]    *Mangone v. First USA Bank*, 206 F.R.D. 222, 225-26 (S.D. Ill. 2001).

[5]    *See, e.g.*, *Hispanics United v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997); *State v. Nintendo of America, Inc.*, 775 F. Supp. 676, 680-81 (S.D.N.Y. 1991).

[6]    *Siegel v. Realty Equities Corp.*, No. 70 Civ. 4338, 1973 U.S. Dist. LEXIS 12499, *8 (S.D.N.Y. July 30, 1973).

[7]    *Isby*, 75 F.3d at 1196.

[8]    *League of Martin v. Milwaukee*, 588 F. Supp. 1004, 1012 (E.D. Wis. 1984).

### B.       Evaluation Of The Proposed Settlement

### 1.       The likelihood of success in establishing liability and damages

In assessing the fairness of the proposed settlement, a primary consideration for the Court is to balance the risk of establishing liability against the benefits afforded by the settlement.[9] When deciding to settle the class claims, Plaintiff recognized the significant period of time that would be required to go to trial on a class basis in this case.  Notably, to the best of Plaintiff's counsel's knowledge, no EFTA case has yet gone to trial, so there is no guiding authority on the likelihood of success for those claims on which Plaintiff was not yet granted summary judgment, or the amount of damages a jury would award for the violation alleged.  Plaintiff considered the risks of a jury trial and the likelihood that Defendant would appeal any judgment or adverse determination, including the significant increase in time and expense that would be involved in such an appeal.

Thus, by agreeing to settle the class claims, Plaintiff achieved a substantial benefit for the class members.  Here, each class member who timely claimed in and completed the W-9 form to verify their identity is eligible to receive the maximum statutory damages available to an individual under the EFTA – without incurring additional litigation expenses, risk of loss, and consuming the judicial resources necessary to conduct a trial.  The *pro rata* distribution to each valid claimant will therefore be $1,000.00.

Approval of the Settlement Agreement avoids the uncertainty inherent in litigating several sharply contested issues concerning the interpretation of EFTA, the issue of whether Defendant's alleged conduct was willful, and the factors associated with assessing damages, as well as the risk that a similar, smaller or zero recovery would be achieved after a trial and appeal.

---

[9]       *See Mangone*, 206 F.R.D. at 225.

2.      **The extent of support of the settlement by the parties**

The parties to the Settlement Agreement have promised to cooperate to the maximum extent in: (1) seeking approval of the Settlement Agreement; (2) defending any appeal from the settlement; and (3) defending any collateral attack on the settlement or its effects.  The parties have also agreed to cooperate with one another in the notice and claims validation process.

3.      **The judgment of counsel**

The judgment of counsel also weighs in favor of approval of a settlement.[10]  Here, in light of the relief being obtained for Plaintiff and the class members, class counsel concluded that the settlement is fair, reasonable, in the best interests of the class members and should be approved.  This conclusion is based upon, *inter alia*, class counsel's experience in litigating consumer class actions, assessing the likelihood of success on the merits, and assessing the available statutory damages that could be recovered if Plaintiff prevailed.

4.      **The presumption of bargaining in good faith**

In addition to the presumption that settlement negotiations between and among experienced counsel have been conducted in good faith, this settlement was, in fact, the result of an arm's-length negotiation process.  There was substantial give and take by the parties prior to agreement on the terms of the Settlement Agreement and it was negotiated with the Court's assistance.

5.      **The nature of the issues of law and fact**

The issues of law and fact in this litigation also support approval of the proposed settlement because, as noted above, the amount of time and expense needed to litigate the class claims to conclusion would be complex, lengthy and expensive, especially when there is little or

---

[10]     *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is entitled to rely upon the judgment of experienced counsel for the parties).

no guiding precedent for Plaintiff's claim.

### 6. The reaction of the class members

In this case, while 66 persons filled out and returned claim forms, not a single objection or opt-out was received. This indicates that the response to the settlement was overwhelmingly favorable and that the notice was visible and effective. There were also no objections to the parties' claims denial process, which was implemented to ensure that the settlement fund was not diluted by mistaken and/or fraudulent claimants. Individuals with questionable claim forms were given the opportunity to contest the denial of their claim by, (a) submitting corroborating proof of their use of the ATM (by providing a receipt or bank statement), (b) filing an objection to the denial with counsel, and/or (c) filing an objection to the denial with the Court. The deadline for responses and objections was April 10, 2012 and none were filed or received. Thus, there is no reason to deny payments to valid claimants per the terms of the negotiated settlement agreement.

### C. Notice Is The Best Practicable

Rule 23(c)(2)(B) requires that class members be given "the best notice practicable under the circumstances…." Rule 23(e)(1) requires that, in class settlements, notice be given "in a reasonable manner to all class members who would be bound by the proposal." In this case, this Court was satisfied, upon preliminary approval, of the impracticality of providing individual notice. The parties agreed that direct mail notice was untenable in this case, because: (a) it was cost-prohibitive; and (b) it would require issuing subpoenas (and likely seeking compulsion orders) in many jurisdictions around the country to obtain the identity of class members from potentially hundreds of financial institutions that issued credit/debit cards to class members.

Here, logs were maintained for the ATM transactions at issue in this case but they do not identify the class members' names, addresses or provide any other contact information.

Testimony obtained from banking personnel in other EFTA class actions has confirmed that typical ATM transaction logs identify the class members' ATM card transactions by a PAN, or "primary account number." Certain digits of the PAN correspond to the particular financial institution issuing the bank card while other digits of the PAN uniquely identify the class member. The digits corresponding to the financial institutions are called a BIN or "bank identification number." *See*, *e.g*., Affidavits of Eduardo Monteagudo, attached as Exhibit D hereto.

With the PAN, while it is theoretically possible to locate many of the class members by one of two methods, it is under the circumstances of this particular case impracticable.

    a.     The first method would be to obtain the name of the financial institution which corresponds to the bank identification number contained in the PAN.[11] Assuming the financial institution corresponding to the BIN could be located, Plaintiff would still need to issue subpoenas to each of the dozens of corresponding banks. Plaintiff would then have to request from each of these banks the account holder information (name, address and other contact information) corresponding to the PAN numbers derived for the more than 4,500 transactions. From this point, Plaintiff could create a database of the class members' addresses. From the database, notice could then be sent to the addresses via first class mail. Thus, while theoretically possible, under the circumstances, the above-described method is not the best practicable means of sending notice given that this laborious process is not guaranteed to produce successful results.

    b.     The second theoretical method of sending notice would be by a reverse interchange method. Plaintiff's counsel has never used this method and it is therefore unknown whether it would be effective. Essentially, it would require the parties to send a message electronically to the class members through the shared ATM networking system. According to the affidavit of Eduardo Monteagudo, Vice President of First American Bank, it cannot be executed under the then current shared ATM network operating guidelines.[12] Further, assuming it was possible, the cost of such a notice

---

[11]     In the case of *Burns v. First American Bank*, Eduardo Monteagudo, Vice President of First American Bank swore under oath that no single comprehensive source of bank identification numbers exists in the financial institutions industry. *See* Affidavits of Eduardo Monteagudo, attached as Exhibit D.

[12]     *See* Affidavits of Eduardo Monteagudo, attached as Exhibit D.

here would exceed $63,000.00 based upon a projected expense of $14.00 per transaction.

Therefore, Plaintiff submits that the newspaper publication notice (covering the areas in which the ATMs are located), posted notice, and website notice was the best notice practicable under the circumstances.

Individual notice by mail is required where the class member's address is known or is available through reasonable effort. *See*, *e.g*., *In Re General Electric Capital Corp*., MDL 1192, No. 97 CV 3065, No. 97 CV 9005, 2000 U.S. Dist. LEXIS 4808, *16-17 (N.D. Ill. March 9, 2000). It is respectfully submitted that, due to the third parties that would be required to even identify the banks who issued the ATM cards used, such a process exceeds the reasonable effort required under the Rule. In other words, the notice effectuated here constituted the "best notice practicable under the circumstances" of this case. Fed. R. Civ. P. 23(c)(1)(B).

The notice issued herein described in plain terms the nature of this lawsuit, the settlement class definition, the parties' claims, issues, and defenses, the terms of the settlement, the deadlines for opting-out, objecting and submitting claim forms, the binding effect of the proposed settlement, and the date, time and place of the Fairness Hearing. It was therefore reasonable and appropriate notice.

**D.    Plaintiff's Request For Fees And Costs Is Reasonable**

The parties agreed that, upon approval of the settlement, Plaintiff's counsel would request court approval of fees and costs in the total amount of $50,000.00. By agreeing to fees, the parties recognized the time-consuming process that would be associated with submitting to a formal L.R. 54.3 fee petition and sought finality as to the fees that could be awarded. "Federal

courts naturally favor the settlement of class action litigation,"[13] and here, that was accomplished.[14]

Reasonable attorneys' fees and costs are available in the case of any successful action to enforce EFTA.[15] Under this "prevailing party" analysis, the relevant inquiry is whether the Plaintiff has succeeded on "any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit"[16] Here, it is undisputed that, while Defendant contests liability, Plaintiff achieved a substantial benefit by, (a) providing the class with the opportunity to claim in for a *pro rata* share of a settlement fund, and (b) providing valid class claimants with the maximum result they could have achieved had they filed individual suits – $1,000.00.

As of April 20, 2012, Plaintiff's counsel's total fees are approximately $50,000.00 as of the date of this memorandum, with costs of $981.65, but these fees will be well in excess of $50,000.00 after attending the final fairness hearing, submitting the final approval order, working with the claims administrator to finalize payments to class members, and closing out the settlement fund. *See* Exhibit E, Counsel's Fee Certification. Plaintiff's counsel therefore seeks approval of the amount agreed to by the parties – $50,000.00.

This request should be approved as fair and reasonable for several reasons. First, it is the amount that the parties, who had their interests represented by experienced counsel, determined was reasonable after several rounds of arms-length settlement negotiations. Second, fees in the amount of $50,000.00 will not reduce the benefit to the class because each valid claimant will

---

[13]     *Isby*, 75 F.3d at 1196.

[14]     Preliminarily, Plaintiff notes that under a "prevailing party" analysis, fees should be awarded where a plaintiff has succeeded in obtaining some of the benefit sought in bringing suit.

[15]     15 U.S.C. § 1693m(a)(3).

[16]     *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

still be receiving EFTA's maximum individual statutory damages award of $1,000.00.[17]  Third,

fees were negotiated so that attorneys' fees would be 1/3 of the total settlement amount.  Fourth,

the negotiated fee was based upon an expectation of what counsel would incur in lodestar, with

an agreement to accept a reduction that is reflective of the parties' give-and-take in settlement

negotiations.  And finally, because the amount sought is actually less than what counsel's

lodestar will be, the request for the negotiated award of $50,000.00 should be deemed fair and

reasonable.

An award of attorneys' fees calculated using the lodestar method, which is determined by

multiplying "the number of hours reasonably expended on the litigation times a reasonable

hourly rate,"[18] "is presumed to be a reasonable fee"[19] and "includes most, if not all, of the

relevant factors constituting a reasonable attorneys' fee."[20]  This does not mean a standard of

what was "necessary" or could have been avoided in hindsight.  What the court is not to analyze,

however, is the amount of fees in relation to the size of the recovery.[21]  In addition, the Supreme

Court has held that the use of current rates is proper since such rates more adequately

compensate for inflation and loss of use of funds.[22]  Here, therefore, the fee award should be

---

[17]     15 U.S.C. § 1693m(a)(2) (A) states, "in the case of an individual action, an amount not less than $100 nor greater than $1,000."

[18]     *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[19]     *Id.*; *accord People Who Care v. Rockford Bd. Of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996).

[20]     *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986).

[21]     *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also, City of Riverside v. Rivera*, 477 U.S. 561, 576-79 (1986)(Supreme Court held that as long as the plaintiff is successful and recovers more than nominal damages, the plaintiff should not be awarded less than the lodestar amount of attorney's fees simply because the fees are not proportional to a damages award); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985).

[22]     *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

approved as reasonable.

## Conclusion

Because the Settlement Agreement reached is the product of good-faith bargaining between experienced counsel and provides a substantial benefit to the class members, this Court should grant final approval. A copy of the proposed Final Approval Order is attached hereto as Exhibit F.

Respectfully Submitted,


By: /s/ Stacy M. Bardo
One of Plaintiff's Attorneys

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave, Suite 9020
Chicago, IL 60601
(312) 729-5288

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL 60602
(312) 782-5808